Good morning, and may it please the Court, Shelby Lemel of Masters Law Group here on behalf of Fidelitad. I'll attempt to reserve five minutes for rebuttal. My intent is to move immediately to the question of federal officer removal and rest on the brief for the unjust enrichment arguments unless the Court has specific questions. Speak into the mics a little more, thank you. Is that better? Great. Yes, it is. Much better. Okay. So, of course, again, let me know if you have specific questions on unjust enrichment. And with that, I'll go to federal officer removal and focus on the acting under prong of that test. And there are two parts to the acting under prong. The first is whether there's a special relationship between a federal officer or agency and that officer's subordinate. And that, of course, comes directly from the controlling decision in this case, Watson. And frankly, Your Honors, this is where the district court erred, where Insitu's argument fails, and where this case should begin and end. Well, our case law says, it phrases it a little differently. It says, there must be a causal nexus between the private party's actions taken pursuant to a federal officer's direction and plaintiff's claims. That is the second part of the one. Right. That's the second part. And it seems that's the part that the district court focused, that the briefs focus on. So tell me, I'm trying to figure out in this case where the federal officer's direction is. There isn't one. That's the point. Okay. Well, if, let me change the facts a little bit. If Insitu, how do you say it, Insitu, had called up the Department of State and said, we have this transaction going on with Fidelitad. Is it okay? And they said to them, you better check their export licenses carefully before you proceed. Would the case then be removable? No. Why not? Because you're still lacking a federal relationship. Well, I just, it's the relationship that I'm trying to find in our case law. Your Honor, that comes directly from Watson, and Watson defines the term under as the creation of a relationship between a federal officer and its subordinate. The relationship is that you're acting under the direction, isn't it? It must be, must there be a relationship other than acting under the direction? No. Acting under has two parts. Under means there is a federal officer and a subordinate. Then the second piece of acting under is this directive from the subordinate, or from the superior to the subordinate. Without the relationship, you never get to the directive. Well, I understand all that. My problem is, are you saying that the relationship is some additional requirement in our case law over and above acting under the direction of the federal officer? No. It's a piece of the acting under requirement. Okay. So, it's really another way to describe it, right? Well, it's a requirement of acting under, and the reason I'm saying that it's so. Of course. You must have a relationship with the person. The relationship is that some federal officer has directed you to act under his supervision, correct? No. That's not enough. The relationship is a superior subordinate relationship, and then Watson defines that as a delegation of authority, a contractual relationship that doesn't exist. My problem with that description, I'm not sure it's all that important to the disposition of your case, is that how do you deal with the federal contractor cases then? We have cases that say a government contractor produces a product. It's defective. Some private person sues, and the government contractor may remove that case, correct? Yes, but you deal with those cases the same way Watson did. They're distinct because there's a contractual relationship which creates the subordinate superior relationship. The contractor — Why do we have to have subordinate superior? Because that's what Watson holds. Well, I mean, I guess you could say because that's what under means. Under means — Yes, and that's the basis of Watson's holdings. Under is a hierarchical. That is exactly what Watson holds. The term under requires the subordinate superior relationship, and that doesn't exist here. Well, there's no relationship — my difficulty with this case, and it's helpful to you, is I don't see any relationship at all. That's exactly right. I don't see any direction at all. That's exactly right. The other side's contention seems to be we wanted to be careful and make sure we weren't breaking the law, and so we did some things. I also don't see — I think if you get to the second part of the claim, which is that they, in effect, took over your customers, I'm not sure where I see the direction component of that at all. But if we just focus on the part where they're saying to your client, we're not going to deliver right now because we need more verification, I'm not sure I see even the direction there, putting aside whether they were equal level to the feds, subordinate, or whatever. And so let me see if I can explain what happened here, is that the district court bypasses this first issue, whether there's a relationship, and immediately jumps to whether there's  Now, that — Okay, go ahead. That's relevant because you never should get to that phase. But the holding — But the case law doesn't say what order you have to take them in. But the reason you have to take it in that order is that the directive has to come from the federal superior to its subordinate. So if that relationship doesn't exist, you never get to the directive. But more than that, I do have one question here. The only thing that — if Martha gave me any pause here — is there's some person in In-Situ called the delegated security officer or something, right? And she is approved, as I understand it, by the State Department, is that right? I believe so, yes. So what is her role, and why is she operating here? So as my understanding, the basis of In-Situ's argument — and this is in their notice of removal at supplemental excerpts of record 237, and also in the district court's decision in 83 and 84 — her role, what In-Situ claims its role is here, is to ensure my client's ITAR compliance. Now, we can test that as a factual matter, but let's set that aside for the moment. The claim is that they have an obligation to ensure ITAR compliance. The issue under Watson is, where does that obligation come from? Because to satisfy Watson and obtain federal officer removal, that obligation would have to come from the State Department or from DDTC, that is, from a federal superior. It doesn't. It comes from ITAR. Well, that's why I was curious about it, because it seems to be at least some recognition of some role for In-Situ assuring compliance with the security orders. That is an ITAR obligation imposed on In-Situ by ITAR. I'm sorry, what? It's an ITAR — it's an obligation they have under the regulation. It's not a product of their relationship with Fidelitad or their relationship with the State Department. What In-Situ claims and what the district court relied on was 22 CFR 127, subsection 1E, and their point is that they cannot knowingly assist my client in the unlawful export of an ITAR-controlled product. That would be a violation of ITAR. Right. But that is the only basis of their claim, that they have an obligation to ensure compliance with the statute. It's a regulatory obligation. Let me ask you something. I mean, it's not directly relevant, but for me to understand this statute. What about Fidelitad? Are they — they were subject to a very specific license, which told them they have to do X, Y, and Z. Yes. Would they be federal officers for this purpose if they'd been sued? No, because — and they don't have a contractual relationship. They don't — they're a regulated entity. But they are not — I mean, it did seem to me, reading through the cases, that the underlying license here is something more than just a regulation applicable to people in general. It was very specific, and it said you must do X. Yes. So I'm not sure that that wouldn't be. And I'm not sure why you need to contest it. Well, it's — yeah, I guess I should say the issue is not before the court. And the reason I would contest it, however, is that — because Fidelitad's only relationship to the government is as a regulated entity. They're not — Well, as a licensee. Yes. But they — Which is a little more than a regulated entity. But the license is the direct product of Fidelitad. Because the license is directed at — the only reason I am getting into this is because I think it's what got the district judge somewhat off course, because he thought there was a directive, but it was a directive and perhaps a relationship. Yeah. I mean, you've got — you've got a direct relationship at some point with the government because the way this thing unwinds — Sure. My client does it as the applicant. Right. They deliver the drones to the government and the government then fulfills your contract. Well, we have a direct relationship with the DDTC because we're the licensed applicant. So let me — I want to understand the limits of this doctrine. Let's assume — and I don't think the record makes this — supports this here, so this is, I think, a hypothetical — that in situ does some checking and then calls up the Federal Government and says, are these guys complying with their licenses? And they're told, yes, they are. Okay. Are they acting under the direction of a federal officer then? No, because all they're checking — well, they're not acting under. Are they following some direction from a federal officer? Perhaps, but that's not sufficient. That's not actually the response. Right. I use the statutory language. Right. So that's why I take issue with that language. Are they following some sort of direction? Sure. Is that enough for removal? No, it's not. Okay. If someone says to them, hmm, don't deliver these drones until we check further, are they then acting under the direction of a federal officer? No, because the question would be, why don't deliver the drone? The why is because it's not compliant with the regulation. You're not compliant with ITAR. No, but what if the officer just says — you don't get to change my hypothetical — the Don't do anything until I check to make sure that these guys are compliant. And so at that point — that's not this case, so I'm not — I'm trying to test the limits of this doctrine. And the — and in situ says, fine, and says to your client, we're not going to deliver until the feds tell us it's okay. Are they then acting under the direction of a federal officer? Not unless that exchange creates a subordinate-superior relationship. That's why I'm having some difficulty getting to. And that's — I don't think it's the facts of this case, and that's why I'm a little resistant to importing the subordinate-superior language from Watson into this case. So let me give you the next step of the hypothetical. The officer at the State Department says, don't deliver these. I think there's a problem with these guys. Are they then acting under the direction of a federal officer? Yes. Say yes. I mean, I don't understand why not. Even though that federal officer is not their superior. Because Judge Berzon, what you pointed out at the inception of this discussion was what does under mean? Under means federal officer and subordinate. And under Watson, that doesn't — Federal officer just told them don't do it. Now — Okay. Sure. So your only argument would have to be something to the effect of you don't have the authority to do that. But — No, no, no, no, no. You don't have the authority to say don't do it. From my perspective — So you are acting under that. I must say, the absence of all those things in this case cut in your favor. Yes. I'm just trying to figure out — Yeah. I'm a little resistant to your notion that the order must always come from a subordinate to a superior, because in the last circumstance I gave you, while I wouldn't view the federal officer as my superior, I would think I was acting under her direction — Right. Right. It's a federal agent saying, citizen, help me arrest this bootlegger. Okay. So now I want to get back to the real world. I want to make sure I understand the record correctly. There's none of that in this case, is there? No. And that's exactly why this argument fails. Watson refers to it as the failure of omission. There is nothing in this record that supports the assertion that DDTC instructed and set you to do anything — I mean, another criteria is whether there's a federal defense. Is there a federal defense here? No. Well, I guess there would be if there were direction, right? If DDTC said, don't deliver these, then they would have a federal defense. But there's not. What DDTC does is issue my client a license and proviso that my client's obligated to follow. And where the district court got screwed up here is in saying that even though that's issued to Fidelitat, that in situ has an obligation to ensure compliance without asking why. And the why is because that's how in situ follows ITAR, not because they were directed to ensure compliance, but because that's how they follow ITAR. And under Watson, that's just not enough. And so in addition to asking the court to reverse and remand to the state court, I'd ask for fees, because there's no reasonable basis for removal here. Until in situ can identify a delegation, a contractual relationship, or a direct federal order, there was no basis for removal. Why isn't that an issue you should take up with the district judge if in fact we vacate and remand? I'm sorry, I didn't hear the first part of the question. Why isn't the fee issue an issue you should take up with the district judge if in fact we vacate and remand? We can, but I'm asking this court to allow us to do that by recognizing that there was no appropriate basis for removal, and that is for this court to do. I don't have the case in front of me, or I'm sorry, under Martin, 546 U.S. It's appropriate for this court to address that question. Thank you. Good morning, Your Honors. Eric Wolff, counsel for in situ, and with me at counsel table is Alex Fenner. I heard a lot of questions that seem to be expressing concern about the removal here. I want to go straight to some of the hypotheticals. No, go straight to the real facts first. Sure. Tell me what Federal officer you are acting under the direction of. So there are different levels. And the first level is the licensing officers at DDTC. But you weren't a licensee. It's our product. It's our product, and we're on the hook. Oh, yeah, but you weren't a licensee, so there was no direction to you. Well, it's a direction involving our product, Your Honor. Right, but it wasn't to you. It's the law. The law directs you to do certain things. Okay, the law directs us to do certain things. But at the highest level here, the Federal Government is providing aid to Columbia. They do that through foreign military sales, which are direct U.S. purchases, which in situ made to the Federal Government. They do that by coordinating purchases by Columbia, some of which are made with U.S. funds. So they have made a decision, officers, military officers. You can read their declarations at SER 63 and SER 70. They have chosen the ScanEagle technology for Columbia. Okay, how do they get that? They get that from in situ. They place an order for that technology, which comes from in situ. That then flows down to the licensing officers, and you get these very specific directions for specific transactions. And if in situ violates them, it violates ITAR, and it also can lead to disbarment. So ultimately, I mean, this is the problem, is that, yes, if you violate it, you violate ITAR, but ITAR is just a general statute directed at the world. That is not a fair characterization of ITAR, really, in the way it works, because it goes down to the specific transaction level, which is why I think it would be a mistake for this court to just say, well, compliance with ITAR, that can't be a basis for removal, because Well, this is not a federal question case, though. We're not dealing here with a case that's being removed because it's a federal question case. It's not a 1331 case. We're dealing with a case where the basis of removal was that you were acting under the direction of a federal office. And have a colorable federal defense. Right. Which is we were following the provisos. Put aside the colorable federal defense, because we have to have all three. Correct. Okay. So we're focusing on the second one, and I tend to agree that you would have a colorable federal defense even if you were in state, even if this weren't removable. That's not the issue. The issue is whether you were acting under the direction of, this is the federal officer remover statute. So again, I ask you, identify the federal officer under whose direction you were acting. The federal, the first line federal officers are Tim Ruthmeyer and Tony Durth. Okay. Tell me what direction they gave you. I read their notice of removal, and I've read the complaint. I don't find any reference in there to them giving you directions to do what you did. It's the provisos. It's the provisos. In your hypothetical. I'm sorry. The provisos. They're at pages 13 and 14 of our brief. But the provisos are in a license to. They're in a license to export our product, and we cannot export in violation of that. I agree. No, we agree about the law. So tell me, these two people that you identified, did either of them say to you, check out and make sure that these guys are in compliance with the provisos? Not that I'm aware of. Okay. But. Did any federal officer instruct you to, other than what ITAR tells you to do, to look at. Your Honor. No, let me finish. Let me finish. We'll give you time. Yeah. To check out Fidelitat's compliance with the provisos. I understand federal law may have mandated that you did that. That's not my question. My question is whether some officer told you to do that. The provisos are the direction. I mean, this is, it's right there in front of you. That's what the provisos are. They are directions for how to do this transaction. The proviso is a federal officer? The provisos come from the State Department that is part of this program in Columbia. Okay. This is not like you go on Amazon.com and order a ScanEagle and it's subject to some regulatory requirements. These are, this is defense technology that the U.S. wants in Columbia. The U.S., the first ScanEagles in Columbia, and this is coming straight out of the complaint, were purchased by the federal government through a classified federal agency and SITU didn't even know they were in Columbia. Okay. The government is placing this technology in Columbia. It is placing it in order. What difference does that make with respect to whether or not, look, the government could be selling thousands of these to the, to, to Columbians. The question in this case is whether your client was acting under the direction of a federal officer. If I understand your position correctly, so tell me if I'm wrong, is that you aren't acting under the direction of a federal officer because federal officers compiled these general provisos, correct? No. No. I would say our core argument is there is no principled reason to treat us different than the government, differently than the government contractor cases. You asked for. In, in, in the government contractor cases, the government has told you how to make a product and, and then, and then the, the person who buys the product who's injured by it or is somebody, not necessarily buys it, but somebody who's injured by it says the product was made incorrectly. So that you, you were, you made the product under the direction of the federal government. That's precisely what we're doing, Judge Hurwitz. I mean, I think. No, you made the product in those cases because you had a contractor relationship with the federal government and it told you how to build it. I, I understand you're trying to make the analogy, but again, I'm not, it's, those cases hurt you, I think. It's this close. I mean. It is, it is this close. The question is whether it's this close. But what's, what's the principled reason for finding that daylight? And that's what I don't understand. This is the problem. At some point, this statute becomes a wiggle around, um, the federal question, um, requirement. Um, and essentially you, for federal question purposes, a federal defense is not good enough, right? Correct. Um, and so what's essentially a preemption like defense says we had to do this because we were required by law to do it, would not get you into federal court on federal question. Correct. And the more one expands this federal officer requirement beyond, um, I understand it's been said to be interpreted broadly. That was the next sentence you're going to make. No, it's not actually. Because I know, I think I know where you're going, Your Honor. I think what you're about to say is we need to insist on federal officer direction because that's going to keep it within federal question and the federal that, and that is actually not how it works. I mean, that's city of Mesa, right? City of Mesa. It's the federal defense that gets you within article three arising under jurisdiction. So the federal defense gives you enough of a federal question that the statute is constitutional. It's constitutional, but you're not asserting arising under jurisdiction here. Correct. But the federal defense is enough to satisfy the constitutional requirement of arising under for article three. Sure. That's not, that's not, that's not the problem. Here's where the problem that Judge, Judge Berzon lays out is this, the Supreme Court of the United States for better or worse, starting with Motley has said that while a federal defense satisfies article three, it doesn't satisfy 1331. And so now we have a question of whether or not we've in effect drawn an enormous hole in the Motley doctrine, in a 1331 doctrine by letting a plaintiff say, well, but I was just following federal law. No, your honor, we're nothing we're saying here contradicts Merrill Dow, any of the arising under cases. I mean, we're now, no, no, you've got, everybody agrees. If this were simply a question of article three jurisdiction, it'd be fine because you're asserting a federal defense and that's enough for article three. It's not enough for removal though. So for removal, so for removal, we have to satisfy the statute and the statute is constitutional as long as you have a federal defense. So they included that. Right. But it's only one of the three. What I was saying, and I, and I'm sorry, Judge Berzon, I, I put words in your mouth, but what I'm saying is if, if the panel's concern here, if the panel is thinking we, we need to rule against him because we're blowing a hole open for removal here and we need to be really strict on, you know, where's the federal direction. It's not strict. It's not strict enough to have a limit someplace. But, but the, the issue is you do not need to do that for, for some purposes of arising under and making sure there's a federal question or whatnot. And there is no way that ruling, that affirming Judge Rice is going to create some gaping hole that allows removal. As we note in our brief, state courts are not handling ITAR decisions. I mean, I've had cases that involve more run-of-the-mill torts and courts naturally say, well, if we allow removal here, where's it going to be all this removal of cases that are normally handled in state courts. I mean, to be frank though, I'm not at all sure you do have a federal defense, but that's, I mean, your, your defense is essentially, we spent the time, the time, they, they accuse us, this is what I, they accuse us of delaying, you know, because we were trying to take over their work, but we're really, we were delaying to, because we had to have compliance with ITAR. Essentially. Is that your, is that? Our defense is we were doing what federal law requires. And that if they want to say. But federal law doesn't tell you how long you're supposed to take to do it. It could. It could. If the argument is you're acting in bad faith. And in fact, as I understand, what you ultimately said was that you had an incompetent person and that's why it took so long. That is not what, that's what. Or an inexperienced person. No, no, no. When they got deposed on that, that was the most that they could say. They had no actual evidence of bad faith. Their claim. I just don't know if that's a federal defense. It doesn't really matter, but it's not a classic federal defense of any kind. It's not a defense that says we had to do what we did. It's a defense that explains why you took the time to do this, but not why it doesn't really negate their accusation and it doesn't, go ahead. Well, I feel, I feel like the court has provided this like withering analysis of the allegations and what's going on that, that frankly is very removed from the procedural framework that you set in Light v. Crane. In which, I'm sorry? Light v. Crane in 2014, which actually came down after the district court's decision. Like the standard you apply here is rule eight. We get a short and plain statement. I agree with you. You're well beyond that. We take everything you allege in your complaint as true. We take everything you allege in your notice of removal as true. And you may disagree with me on, on the effect of this. My difficulty is taking each of those as true, I still can't identify the federal officer under whose direction you are acting. And so I take it your legal position is there need not be a specific federal officer under whose direction you were acting as long as you were acting pursuant to the general commands of Federal law. Can I, can I try again to, to thread this needle? No. Do you agree with the first part of it? There was no, no Federal officer directed you to do something, correct? Incorrect. Who? Licensing officers. Did not. You have no allegation. You have no, no, stop. You have no allegation in your notice of removal that a licensing officer communicated with you and said you must do the following things, correct? Incorrect. The proviso is their communication to the manufacturer. We make the product. They, they, Fidelicat could take that license somewhere else, they can't get the product. The proviso is in the license, is it not? Yes. So what you're saying is that when the, these officers issued the license, they gave you a direction to do certain things. Is that what you're saying? Yes. Yes. That's the, that's, that's the, that's your, that's your direction argument. That is absolutely our direction argument and it follows through, Your Honor, it follows through up the chain. To the military commanders who were providing the aid. Well, no military commander, no military commander gave you a direction. Let's just, let's just. They ordered the product, Your Honor. They didn't, actually, in this case, they didn't order the product. Actually, in this case, on the second license, they took possession of it in Pennsylvania. They took, they took delivery of the product, but the product was ordered by Fidelicat, correct? The. Well, I know the facts of the case. We don't have to fight about them. Yeah. Fidelicat ordered the product. Really. Your original. We're splitting hairs here. Well, no, they're splitting hairs. I'm talking about facts. I mean, Fidelicat's not using the ScanEagle. The U.S. government is using it in Columbia. True or false? These are true or false questions. Fidelicat made an order to your client for the drones. Correct. Yes. True. Yes. Eventually, Fidelicat directed you to deliver them to the federal government. True. The. True. The federal government directed that. Okay. But so they did, the federal government did not order the drones from you. Correct? Ultimately, of course they did. I mean, they're the ones who get them. So anybody who gets something ordered it. So if I. They're the end user. If I order a gift for my child and it gets to my, because it's what my child wanted for Christmas. I guess you could say I ordered it, not my child. See, I think you don't have a bad argument in this case. I'm not denigrating your argument. I feel better hearing that. What I'm having difficulty with is your remaking of the facts. And the facts are the facts. No federal officer communicated with you to direct you to do something. Your position is that because the federal officers issued the proviso to Fidelicat and its licenses, that is the equivalent of a direction. Is that fair? That's fair. That's fair. Okay. And so that may be, that may be a good position. You may win on it. But what we've had difficulty so far with is your insistence that some federal officer gave some direction to you other than issuing the license. And I don't want to suggest that. Other than issuing the license and the ITAR requirements that you. Yeah, and the general requirements of the law. And I would, no, and I would add in selecting this product for a military program in Columbia. Because in the range of ITAR cases, you may have countries that decide on their own, want a particular technology, the U.S. says fine. Okay. Over here, in our case, and again, this is why this case is a narrow removal situation. You have a more than a decade old U.S. federal government program in Columbia using the ScanEagle technology. And so, and the U.S. government buys ScanEagles. And the U.S. government, and this is in the complaint itself, the U.S. government plans with the Colombians what technology they're going to get and how they're going to use it. So, they're making that order. So, and there are government contractors in this case. And actually, Fidelitad has previously conceded they're a government contractor. Oh, sure, there are plenty of government contractors here. But this is not a case that arises out of government contracting. Well, the second license, when they deliver it in Pennsylvania, they're delivering it to Fidelitad. That is a government contract. And, and, Fidelitad's not complaining about the delivery of the drone to it. It's complaining about, essentially it's complaining because you delivered everything. Eventually, yeah. It's complaining about your alleged tortious interference with prospective advantage. That's, that's the heart of this case, is it not? Well, that was dismissed on summary judgment because they didn't have any evidence of that. It was dismissed on summary judgment, but that's their, we're back at the complaint stage now. Because if there's no jurisdiction, we can forget about it. If we go back, if we go back, Your Honors, and I do want to emphasize this procedural point, okay? It, it is, there is a liberal construction of federal officer removal. And you have a liberal panel, but I'm sorry, I'm having difficulty being that liberal. Different versions of liberal. But, but, you know, we made our allegations by attaching a declaration from a trade control person at Boeing. And trade. And what, I'm sorry? A trade control person at Boeing. And, and for those folks, you, they are absolutely working with the federal government. Right. To deliver these products. I read the declaration. Yeah. And the difficulty, again, agree with me, the declaration doesn't say somebody at the federal government communicated with me and told me to do the following things. Correct. As, as, as you hypothesize. And let me just say about your hypotheticals on that point. The, the idea of calling up the State Department and somebody says, don't, don't give it to them. That is absolutely. I agree. I agree. I thought, I thought your opponent was being too, too cautious. I don't think that's a close call. In fact, we cite the CRGT case, which is actually from the fourth circuit. It's a district court in the fourth circuit where that's exactly what happened. The, the government said, stop working with that subcontractor. And then you're acting under the direction of a federal officer. You are. And, but, but for the folks on the front lines at Boeing and in situ, they, they are acting under federal officers. They are acting under these licensing officers. I mean, it is their job to follow these instructions no differently than if they called up and were told that on the phone. That's how they would treat these provisos. And I think a fair reading of Mr. Hawe's declaration would interpret it that way. And so if the panel has more questions about those relationships, more questions about that evidence, that could have been developed in the district court. And that's the proper procedure would be to, okay, allow evidence. Now, procedurally speaking, Fidelitad did not come back with any evidence. So. They don't have to. They, they don't have to. They, they say your, your notice of remand on its face, your notice of, of removal and your declarations all taken as true on its face are insufficient to support federal removal. And the district judge says, no, they're sufficient. So it's hard for me to understand where there was a burden on them at some point to bring forth further evidence. Well, I think if they want to claim that as a practical matter, this is regular old compliance. Or as a practical matter, people don't treat these things as directions. Then they need to have a declaration that says that. We did. Our declarant says that. And we should win if that's unopposed. So, you, you say, I don't read it that way. We get all the inferences on that. If your officer said, I want to focus on this, because we all agree that merely complying with federal law doesn't entitle you to federal officer removal, correct? Correct, of course. Okay. So your officer says, I was complying with federal law. And I regarded these, these provisos as directions. It doesn't turn them into directions unless they are as a matter of federal law, correct? Correct. But, but. So I'm not sure that the fact that that was unopposed means the case is over. It just means we have to determine whether or not what your officer said amounts to acting under the direction. So there's what the officer said about how he treats them. And then there are the provisos themselves, which as the district court said, are transaction specific about orders of the ScanEagle. And, and those provisos on their face are no different than the kinds of provisions you would find in a government contract. They, they read the same way. They're, they're, they are providing the product to Columbia no differently than when in situ provides it under a government contract. And our core argument is there is no principled reason. And there is no reason consistent with the interest of federal officer removal to treat it differently. Okay, your time is up. Thank you very much. Thank you. So I believe we have agreement that there is no federal officer who ordered in situ to do anything. And the argument, as I understand it, is that in situ is nonetheless close. And close is not enough. Well, the, the argument, and, and I wanted to hear you respond to it. The argument is that federal officers don't send their directives with respect to specific export licenses. By calling up or emailing or doing whatever you and I might do in, in order to communicate with each other. They put a proviso in the license. And when they put that proviso in the license, that's in effect a directive from the federal officer who issued the license. To. Sure. People down the line. Respond to that. And Watson holds that federal agencies are not in the business of passing on authority without saying it. That's not even directed to in situ, it's directed to Fidelitad. In situ's only relationship to that proviso is because Fidelitad voluntarily shared it with them. To have transparency in their business relationships. That's the excerpts of record 463. That was issued to my client, and my client has a responsibility to follow it. As I understand it, an obligation under ITAR to see that the provisos were complied with. It's not, not true. I, I would, it's not exactly true. They can't knowingly allow my client to export a product in violation of ITAR. So therefore, as a reasonable matter, they had an obligation to, to make sure. They have an obligation not to sell us a product if they know we're going to send it overseas unlawfully. That does not create a supervisory role. Therefore, they need to see, they need to see your license. Well, we shared it with them voluntarily. Okay. To be transparent. Sure. But. Sure. But, but I want to go back to what I now understand to be in situ's central argument. Which is that this is the equivalent of a direction from a federal officer. Not in general. Not as, you know, but in a specific case. Go to, you know, the, the provis, what they, what, because there are provisos, that's an equivalent of a direction by the federal officer to check and make sure the provisos are being complied with. There's two answers to that. One, I think Watson rejects a very similar analogy to contractor cases. Effectively saying, and, and I'm referring, of course, to Winters. If there's not a contractor, not a government contractor in this case. In situ and Fidelity are both government contractors, generally speaking. But there's not a contracted issue here. So the comparison in Watson to government. There's a contracted issue, but it's this exclusive. Not a government contract. It's exclusive to distributors. Well, and in fact, it's a contract that in situ never made good on. Never even followed through on. Well, and to, to be fair, that's, that the district court finds there's no evidence of. But put that aside for a second. Yes, yes. Because that's. It never, it was never actually came to fruition. You, you get in trouble the more you press on the facts. Because then we get into the summary judgment. Which I must tell you if it were in front of me, I would affirm. So, I'm, I'm focusing on jurisdiction. Okay. So, so Watson distinguishes contractor cases. One, because there's no contract. And then absent the contract, you don't have the specific direction. As a. If the subject matter of the case is the, is, drives out of a contract with the federal government. We have a, we have direction in effect. Well, I think in effect, and, and the Winters example, of course, is not just the contract exists. But then there's very specific detailed control over the chemicals and ratios used to create Agent Orange. So, it's the contract and the very specific detailed control. So, that relationship is lacking here. Then the. Where in the, I'm sorry, I'm, I'm kind of getting off. But where in the record is the motion to remand? I can't find it. Do you know? I've read it. So, I must have got it out of the district. I believe it's a, well, I, you know, I, I can't answer that question. No, all right. I apologize. Okay. Go ahead. It's SER 203 to 224. Thank you. That's where it is. Okay. And, and the second answer to your question is, is the provisos being a directive to Fidelita, not to Institute. And of course, flow out of the regulation. So, those provisos are a product of the regulator-regulated relationship, not a federal officer-directed relationship. Can I ask a question about what claims remained in this before the district court acted? Unjust enrichment. Before the district court acted, are, were you only, only claiming unjust enrichment before the district court made its summary judgment ruling? No, there were other tort claims. And what survived summary judgment and, and what all we're addressing on here was unjust enrichment. You did make claims related to the delay in the delivery of the initial drones. Yes. Okay. Yes. And unless the court has any further questions, I'd ask the court to reverse the remand. Thank you. The case of Fidelitat versus Insitio is submitted. We'll go to the last.
judges: Thacker, Berzon, Hurwitz